UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAIME DEMELLO, et al.,

      Plaintiffs,

 v.

UNITED STATES OF AMERICA, et al.,

      Defendants.

CASE NO. C16-5741 BHS

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendant United States of America's ("Government") motion to dismiss. Dkt. 17. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 26, 2016, Plaintiffs Jaime Demello, the Estate of Alexander Demello, Michael Demello, and minor children A.D. and O.D. (collectively "Demellos"), filed a complaint against the Government, Adonis Brown ("Brown"), and several unnamed others. Dkt. 1 ("Compl."). The Demellos assert claims for common law negligence, premise liability, wrongful death, and negligent infliction of emotional distress ("NIED"). *Id.* at 6. On October 13, 2016, the Government answered. Dkt. 10. On December 13, 2016, default was entered against Brown. Dkt. 15.

On June 1, 2017, the Government filed a motion to dismiss. Dkt. 17. On June 12, 2017, the Demellos responded. Dkt. 24. On June 16, 2017, the Government replied. Dkt. 25.

## II.   FACTUAL BACKGROUND

This case involves a shooting on Joint Base Lewis-McChord ("JBLM") which resulted in the death of minor civilian, Alexander Demello. The Demellos allege that the Government's failure to secure the perimeter separating the base from a civilian neighborhood, despite safety complaints and knowledge of criminal activity in the area, breached a duty owed to Alexander Demello and proximately caused his death and the other injuries alleged.

The perimeter at issue is marked by a chain-link fence that stands "at the end of Woodbrook Drive SW just beyond 150th St SW, in Lakewood, WA." Compl. at ¶ 3.1. The fence separates a wooded area of undeveloped JBLM property from the adjacent civilian residential area ("Woodbrook neighborhood"). *Id*. As of October 20, 2015, there was no signage along the fence to indicate that the property beyond belonged to JBLM. *Id*. at ¶ 3.3. Just beyond the fence there is a trail through the undeveloped wooded area of JBLM that Woodbrook neighborhood residents used as a dog-walking trail and park. *Id*. at ¶ 3.2. There has been a "6-foot by 3-foot hole" in the fence since 2007. *Id*. at ¶¶ 3.1, 3.2. Brown had frequently used the hole in the fence to access the trail on JBLM property. *Id*. at 3.5. The hole and civilian use of the property beyond it were documented in "complaints to the Security Specialist of JBLM on May 18, 2011," which indicated that the hole was "a safety risk and security issue" and should be repaired

"ASAP." *Id*. at ¶ 3.12. There have also been reports of criminal activity in the area around the compromised fence. *Id*. at ¶¶ 3.2, 3.11.

On October 20, 2015, 14-year-old A.D. and his 13-year-old brother, Alexander Demello, followed their 17-year-old friend, Brown, onto the undeveloped wooded area of JBLM property. The Demellos and Brown were residents of the Woodbrook neighborhood, and "had no knowledge that the wooded property adjacent to their neighborhood belonged to JBLM or that it was Government Property." *Id*. at ¶¶ 3.4, 3.5. While the boys were walking the trail through the undeveloped wooded area of JBLM property, Brown "found a gun under some brush." Compl. at ¶ 3.7. In the hands of Brown, the gun accidently fired, striking Alexander Demello "in the face just below his right eye." *Id*. On October 25, 2015, Alexander Demello died at Mary Bridge Children's Hospital in Tacoma, Washington. *Id*. at ¶¶ 3.9, 3.10.

### III.  DISCUSSION

**A.  Standard**

Defendant moves to dismiss for lack of subject matter jurisdiction. Motions to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge jurisdiction factually by "disputing the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," or facially by "asserting that allegations in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). For facial challenges, a plaintiff's allegations are assumed as true and the complaint is construed in his favor. *Id*. Federal courts are presumed to lack jurisdiction and on a motion to dismiss

pursuant to Rule 12(b)(1) the burden of proof is on the plaintiff to establish subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). To meet this burden in an action against the Government, a plaintiff "must point to an unequivocal waiver of sovereign immunity." *Blue v. Windall*, 162 F.3d 541, 544 (9th Cir. 1998) (citing *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)).

**B.     Discretionary Function Exception**

The Demellos bring claims against the Government pursuant to the Federal Tort Claims Act ("FTCA"). The FTCA is a limited waiver of sovereign immunity that allows claims to be brought against the Government for "the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). Congress has designated numerous exceptions to the FTCA's waiver of sovereign immunity by exempting the Government from liability for certain types of claims. *See* 28 U.S.C. § 2680. These statutory exceptions must be construed strictly in favor of the Government. *U.S. v. Nordic Village*, 503 U.S. 30, 34 (1992) (citing *McMahon v. U.S.*, 342 U.S. 25, 27 (1951) ("statutes which waive immunity of the Government from suit are to be construed strictly in favor of the sovereign."); *F.D.I.C. v. Craft*, 157 F.3d 697, 707 (9th Cir. 1998) ("the FTCA's waiver of sovereign immunity is strictly construed in favor of the sovereign."). Therefore, a claim that "falls within an exception of the FTCA . . . must be dismissed for lack of subject matter jurisdiction." *Bibeau v. Pac. Nw. Research Found., Inc.*, 339 F.3d 942 (9th Cir. 2003).

The "discretionary function" exception prohibits suit against the Government for "any claim based upon . . . the exercise or performance or the failure to exercise or

perform a discretionary duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). It is the Government's burden to show that the discretionary function exception applies. *Whisnant v. U.S.*, 400 F.3d 1177, 1181 (2005) (citing *Bear Medicine v. U.S. ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001)).

"The Supreme Court has established a two-part test for determining the applicability of the discretionary function exception." *Bibeau*, 339 F.2d at 945. *See U.S. v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988). First, the challenged conduct must "be the product of judgment or choice" on the part of the acting employee. *Berkovitz*, 486 U.S. at 536. Therefore, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow." *Id*. at 356. When an employee acts under such a mandatory directive, their conduct cannot be the product of judgment or choice because they have "no rightful option but to adhere to the directive." *Id*. at 537. Second, that judgment or choice must be "based on public policy considerations." *Id*. at 537. "The purpose of the [discretionary function] exception is 'to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *ARA Leisure Servs. v. United States,* 831 F.2d 193, 194 (9th Cir. 1987) (quoting *U.S. v. Varig Airlines*, 467 U.S. 797, 814 (1984)). Therefore, applicability of the discretionary function exception depends "not on the agent's subjective intent in exercising [his discretion], but

on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert* 499 U.S. at 325.

The Government argues that the discretionary function exception applies to the Demellos' claims because they challenge the Government's alleged "fail[ure] to properly fence and maintain a perimeter" around JBLM, which is "immune from suit" under the discretionary function exception. Dkt. 17 at 14–15. The Court agrees that the discretionary function exception applies to the Government's decision not to maintain the fence or secure the area around it because decisions regarding the maintenance of JBLM's perimeter security are discretionary and implicate public policy considerations. The physical security of military installations is governed by Army Regulation 190-16 ("AR 190-16"), which does not prescribe a specific course of action for the Government to follow in securing its military bases. Instead, AR 190-16 gives base commanders discretion to determine the level of security their base requires and to "develop, set up, and maintain policies and procedures to control installation access" accordingly. AR 190-16 ¶¶ 1-1–2-4 (*see* Dkt. 21-1). Further, AR 190-16 itself illustrates that the Government's decisions regarding perimeter maintenance and security are susceptible to policy considerations because it lists specific policy factors for base commanders to consider when determining how to secure their bases. *See* AR 190-16 ¶ 1-5.

The Demellos do not oppose the applicability of the discretionary function to the Government's "failure to repair or maintain fencing around its perimeter or to secure the boundaries of its property with appropriate security devices." Dkt. 24 at 2. However, the Demellos do argue that their claims should survive because the perimeter fencing issue is

not "the only basis for cognizable claims for negligence against the United States," and that, for their action to be dismissed, the discretionary function exception "must encompass all cognizable claims" they advance. *Id*. at 4–5. The Demellos' argument in opposition fails because it fails to dispute that the specified conduct giving rise to their claims was a result of the Government's course of action in a discretionary function.

The Demellos argue that the discretionary function exception does not apply to their claims because they are premised on the Government's negligence under a theory of premises liability. Dkt. 24 at 8. The Demellos attempt to rebut the applicability of the discretionary function exception by asserting that premises liability law creates a "non-discretionary duty to make the area reasonably safe or to warn of known hazards" and that the Government has "no room to decline" or "opt out" of that duty. *Id*. at 5. However, the Demellos misapply the discretionary function exception. While the Demellos are correct that the Government' status as a land owner may create a general tort duty under Washington law, "it is the nature of the conduct, rather than the status of the actor that governs whether the discretionary function exception applies." *Varig Airlines*, 467 U.S. at 813. The Demellos argue that the conduct they challenge is the Government's "failure to make a portion of their property known to be hazardous safe," Dkt. 24 at 3–6, but this broad statement does not identify any specific nondiscretionary course of conduct that the Government should have followed. To determine what conduct the Demellos challenge the Court must look to the allegations in the compliant, and the complaint alleges only that the Government failed to keep the area at issue safe by "[allowing] the hole in the fence to remain" and "failing to take precautions" against

known criminal activity in the area. Compl. ¶ 3.15. *See Whisnant*, 400 F.3d at 1184–85 (holding a district court "mischaracterized" what conduct a plaintiff challenged when it did not consider the conduct as alleged in the complaint). To the extent that the Demellos claim that the Government was obligated to repair the hole or replace the fence, without further allegations, such a decision falls squarely within the Government's discretionary function in determining how to secure the 90,600-acre base's perimeter. Nonetheless, this is not to say that the Government's failure to repair a base's perimeter fence cannot become a nondiscretionary duty if the condition of the fence facilitates or contributes to a dangerous condition to which members of the public are exposed.

**C.      Failure to Remedy or Warn of a Dangerous Condition**

The Demellos also argue that the discretionary function exception does not apply to their claims that the Government was negligent in failing to prevent or warn of dangers associated with known criminal activity that had taken place on the trail behind the hole in the fence. Dkt. 24 at 8. However, while the Demellos' reply vaguely identifies a failure to make safe or warn of dangerous conditions as negligent conduct underlying their claims, the compliant fails to include allegations about a failure to warn of any particular dangerous condition of which the Government should have known. *See* Dkt. 24 at 3, 6. The complaint does vaguely assert that the trail located behind the fence was "the scene of criminal activity" and that the Government "breached its duty when it knew criminal activity was taking place at the location of the hole in the fence and did not take precautions to prevent injury or death to Alexander Demello." Dkt. 1 at 4, 6. Broadly construed, this language could be interpreted to claim that the Government is liable for

failing to warn those who entered through the fence that the area was dangerous or failing to discover and ameliorate the dangerous condition of the abandoned or mislaid firearm that resulted in Alexander Demello's death.  Under these theories, while the fact remains that the Government has discretion in deciding whether to repair the hole in the fence, the existence and nature of the hole is highly relevant to Alexander Demello's status as an invitee, licensee, or trespasser and what duty the Government may have owed to him in maintaining the trail in a safe condition.

Nonetheless, as the complaint is currently pled, Plaintiffs' conclusory allegations that the Government breached a duty when it "did not take precautions to prevent injury or death to Alexander Demello" are insufficient to state a viable claim.  While the complaint need not include overly detailed factual allegations, it must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  According to the Demellos' complaint, the "known criminal activity" that should have placed the Government on notice of the trail's dangerous condition included a single reported instance of a burglar fleeing through the hole in the fence, which occurred two years prior to the accidental shooting of Alexander Demello.  Dkt. 1 at 5.  Such allegations on their own cannot support a plausible theory that the Government should have known that contraband, such as a firearm, might be found along the trail and that the Government is therefore liable for failing to prevent Alexander Demello's injury.

Nonetheless, the parties do not address whether the complaint could be cured if the Demellos were granted leave to amend their complaint in order to include allegations that would properly support a theory that the Government failed to adequately warn of, or remedy, a dangerous condition of which they should have known. Dismissal without leave to amend "is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). For example, the complaint could conceivably be cured if the Demellos were to allege that the Government knew of frequent or severe criminal activity taking place on the trail that would create a foreseeable risk of dangerous contraband or other dangerous condition being discovered on its premises. Accordingly, the Court grants the Demellos leave to file an amended complaint.

### IV.  ORDER

Therefore, it is hereby **ORDERED** that the Government's motion to dismiss (Dkt. 17) is **GRANTED** and the Demellos' claims are **DISMISSED with leave to amend**. The Demellos may file an amended complaint no later than September 8, 2017. Failure to file a timely amended complaint shall result in dismissal with prejudice without any further order from the Court.

Dated this 9th day of August, 2017.

BENJAMIN H. SETTLE
United States District Judge