UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAIME DEMELLO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | CASE NO. C16-5741 BHS <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S 12(B)(1) MOTION TO DISMISS |

This matter comes before the Court on the motion to dismiss of Defendant United States of America ("Government"). Dkt. 31. Plaintiffs oppose the motion. Dkt. 37. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. BACKGROUND**

This case involves a shooting on Joint Base Lewis-McChord ("JBLM") which resulted in the death of a child, Alexander Demello.

The area of JBLM at issue is marked by a chain-link fence that stands "at the end of Woodbrook Drive SW just beyond 150th St SW, in Lakewood, WA." Dkt. 29 at 3–4. The fence separates a wooded area of undeveloped JBLM property from the adjacent civilian residential area ("Woodbrook neighborhood"). *Id*. Just beyond the fence there is

a trail through the undeveloped wooded area of JBLM that Woodbrook neighborhood residents frequently used as a dog-walking trail and park. *Id*. at 4–5. It was widely known that the area was also frequented by teenage children. *Id.* There has been a "6-foot by 3-foot hole" in the fence since 2007. *Id*. Defendant Adonis Brown ("Brown") had frequently used the hole in the fence to access the trail on JBLM property. *Id*. at 6.

On October 20, 2015, 14-year-old A.D. and his 13-year-old brother, Alexander Demello, followed their 17-year-old friend, Brown, onto the undeveloped wooded area of JBLM property. The Demellos and Brown were residents of the Woodbrook neighborhood and "had no knowledge that the wooded property adjacent to their neighborhood belonged to JBLM or that it was Government Property." *Id*. While the boys were walking the trail through the undeveloped wooded area of JBLM property, Brown "found a gun under some brush." *Id.* at 6–7. Brown accidently fired the gun, striking Alexander Demello "in the face just below his right eye." *Id*. On October 25, 2015, Alexander Demello died at Mary Bridge Children's Hospital in Tacoma, Washington. *Id*. at 7.

On August 26, 2016, Plaintiffs Jaime Demello, the Estate of Alexander Demello, Michael Demello, and minor children A.D. and O.D. (collectively "Plaintiffs"), filed their original complaint against the Government, Adonis Brown ("Brown"), and several unnamed others. Dkt. 1. Plaintiffs asserted claims for common-law negligence, premise liability, wrongful death, and negligent infliction of emotional distress. Specifically, Plaintiffs alleged that the Government's failure to secure the perimeter separating the base from a civilian neighborhood, despite safety complaints and knowledge of criminal

activity in the area, breached a duty owed to Alexander Demello and proximately caused his death and the other injuries alleged. *See id.*

On June 1, 2017, the Government moved to dismiss the original complaint. Dkt. 17. On August 9, 2017, the Court granted the motion to dismiss. Dkt. 27. Specifically, the Court found that the factual allegations in the original complaint focused exclusively on the Government's decision not to maintain the base's perimeter fence and that the Government's decision was the exercise of a discretionary function. *Id.* Accordingly, the Court lacked jurisdiction to consider such a claim under the Federal Tort Claims Act ("FTCA"). However, the Court also found that Plaintiffs, while they had failed to adequately allege a claim based on a failure to warn of known hazards, had nonetheless sufficiently referenced such a claim as to warrant leave to file an amended complaint. *Id.*

On October 4, 2017, Plaintiffs filed their second amended complaint. Dkt. 28. The second amended complaint alleges that the Government knew of frequent criminal activity taking place in the area where Alexander Demello was shot and nonetheless failed to remedy or warn of known dangers inherent to such an area of frequent criminal conduct, such as the presence of weapons or other dangerous criminal paraphernalia. *Id.* 8–9. The second amended complaint also renewed Plaintiffs' allegations that the Government is liable for its decision not to repair the hole in the perimeter fence or maintain adequate security patrols. *Id.*

On November 16, 2017, the Government moved to dismiss the second amended complaint for lack of jurisdiction on the same theory as before. Dkt. 31. On December 5,

2017, Plaintiffs responded. Dkt. 37. On December 11, 2017, the Government replied. Dkt. 40.

## II. DISCUSSION

**A.  Standard**

The Government moves to dismiss for lack of subject matter jurisdiction. Motions to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge jurisdiction factually by "disputing the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," or facially by "asserting that allegations in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). For facial challenges, a plaintiff's allegations are assumed as true and the complaint is construed in his favor. *Id*. In a factual attacks under Rule 12(b)(1), courts "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Instead, a factual attack under Rule 12(b)(1) allows district courts to look beyond "the face of the pleadings, [and] review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Federal courts are presumed to lack jurisdiction and on a motion to dismiss pursuant to Rule 12(b)(1) the burden of proof is on the plaintiff to establish subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). To meet this burden in an action against the Government, a plaintiff "must point to

an unequivocal waiver of sovereign immunity." *Blue v. Windall*, 162 F.3d 541, 544 (9th Cir. 1998) (citing *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)).

**B.    Discretionary Function Exception**

Plaintiffs bring claims against the Government pursuant to the Federal Tort Claims Act ("FTCA"). The FTCA is a limited waiver of sovereign immunity that allows claims to be brought against the Government for "the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). Congress has designated numerous exceptions to the FTCA's waiver of sovereign immunity by exempting the Government from liability for certain types of claims. *See* 28 U.S.C. § 2680. These statutory exceptions must be construed strictly in favor of the Government. *U.S. v. Nordic Village*, 503 U.S. 30, 34 (1992) (citing *McMahon v. U.S.*, 342 U.S. 25, 27 (1951) ("statutes which waive immunity of the Government from suit are to be construed strictly in favor of the sovereign."); *F.D.I.C. v. Craft*, 157 F.3d 697, 707 (9th Cir. 1998) ("the FTCA's waiver of sovereign immunity is strictly construed in favor of the sovereign."). Therefore, a claim that "falls within an exception of the FTCA . . . must be dismissed for lack of subject matter jurisdiction." *Bibeau v. Pac. Nw. Research Found., Inc.*, 339 F.3d 942 (9th Cir. 2003).

The "discretionary function" exception prohibits suit against the Government for "any claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). It is the Government's burden to show that the discretionary function exception applies.

*Whisnant v. U.S.*, 400 F.3d 1177, 1181 (2005) (citing *Bear Medicine v. U.S. ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001)).

"The Supreme Court has established a two-part test for determining the applicability of the discretionary function exception." *Bibeau*, 339 F.2d at 945. *See U.S. v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988). First, the challenged conduct must "be the product of judgment or choice" on the part of the acting employee. *Berkovitz*, 486 U.S. at 536. Therefore, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow." *Id*. at 356. When an employee acts under such a mandatory directive, their conduct cannot be the product of judgment or choice because they have "no rightful option but to adhere to the directive." *Id*. at 537. Second, that judgment or choice must be "based on public policy considerations." *Id.* at 537. "The purpose of the [discretionary function] exception is 'to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *ARA Leisure Servs. v. United States,* 831 F.2d 193, 194 (9th Cir. 1987) (quoting *U.S. v. Varig Airlines*, 467 U.S. 797, 814 (1984)). The applicability of the discretionary function exception depends "not on the agent's subjective intent in exercising [his discretion], but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert* 499 U.S. at 325.

Plaintiffs have alleged that the area where Alexander Demello was shot and killed is a wooded area on the base "commonly used recreationally by the public" for its trails, where teenaged children were known to play frequently. Dkt. 29 at 5. Plaintiffs have also

alleged that the Government failed to adequately warn Alexander Demello of the known risks associated with the area or introduce adequate safety measures. *Id.* at 8–9. The Ninth Circuit has previously noted that the discretionary function exception is not implicated where a military base fails as a landowner in its duty under state law to make safe its property for invitees by warning them of known dangers. *United States v. White*, 211 F.2d 79, 82 (9th Cir. 1954). As noted by the Tenth Circuit, citing the Ninth Circuit's decision in *White*, "the Government's decision, as a landowner, not to warn of the known dangers or to provide safeguards cannot rationally be deemed the exercise of a discretionary function." *Smith v. United States*, 546 F.2d 872, 877 (10th Cir. 1976).

The D.C. Circuit's decision in *Cope v. Scott*, 45 F.3d 445, 452 (D.C. Cir. 1995), further informs the Court's analysis of scenarios premised on the government's failure to warn of known hazards on its property. In that case, the D.C. Circuit held that, while the discretionary function exception applied to the Government's decisions involving the maintenance of a road, it did not apply to the Government's failure to adequately warn of known dangers on that road. *Cope*, 45 F.3d at 452. Similarly, the Court has already ruled that the Government's decisions not to maintain or repair the base's perimeter fence or patrol the subject area falls within the ambit of the discretionary function exception. Accordingly, to the extent that Plaintiffs renew such claims, they are again dismissed. Dkt. 29 at 7–8.

However, this does not mean that the Government was performing a discretionary function when it allegedly failed to inform Alexander Demello of known dangers. To show that a failure to warn is covered by the discretionary function exception, the

Government must show that the alleged failure to warn was itself a conscious decision involving the exercise of social, economic, or political policy. *See Cope*, 45 F.3d at 452 (comparing *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir. 1987) with *Boyd v. United States*, 881 F.2d 895, 896 (10th Cir. 1989)). The Government has failed to establish that its alleged failure to warn those who used the trails in the wooded area of known dangers was the result of a discretionary function. The regulations cited by the Government regarding base security do not contain any policy considerations implicating the use of signage or some other means to warn of known latent dangers in an area used frequently by the public. The Government's present motion to dismiss for lack of jurisdiction must be denied as to Plaintiffs' claims premised on a failure to warn.

Notably, it seems Plaintiffs will have a difficult hurdle to overcome in showing that Alexander Demello was not a trespasser and that he suffered injury from a known artificial latent danger, let alone a foreseeable one. *See* Dkt. 29 at 9 (citing RCW 4.24.210(4)). It is questionable whether such a danger has even been alleged. See Dkt. 27 at 9 ("Such allegations on their own cannot support a plausible theory that the Government should have known that contraband, such as a firearm, might be found along the trail and that the Government is therefore liable for failing to prevent Alexander Demello's injury."). But the Court will not *sua sponte* address these issues when the parties have yet to raise them.

### III.  ORDER

Therefore, it is hereby **ORDERED** that the Government's motion to dismiss (Dkt. 31) is **GRANTED** in part and **DENIED** in part. To the extent Plaintiffs allege that the

Government is liable for failing to repair JBLM's perimeter fence or practice adequate security measures, such claims are **DISMISSED**. Otherwise, the Court has jurisdiction to consider Plaintiffs' claims that the Government was negligent in failing to warn Alexander Demello of known dangers.

Dated this 31st day of January, 2018.

BENJAMIN H. SETTLE
United States District Judge