UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAIME DEMELLO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | CASE NO. C16-5741 BHS <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO CONTINUE TRIAL AS MOOT |

This matter comes before the Court on the motion for summary judgment of Defendant the United States of America ("Government"). Dkt. 47. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.[1]

## I. BACKGROUND

This case involves a shooting on Joint Base Lewis-McChord ("JBLM") which resulted in the death of a child, Alexander Demello.

The area of JBLM at issue is marked by a chain-link fence that stands "at the end of Woodbrook Drive SW just beyond 150th St. SW, in Lakewood, WA." Dkt. 29 at 3–4.

---

[1] Also pending before the Court is the parties' stipulated motion to continue the trial date and related deadlines, filed on April 9, 2018. Dkt. 57. Because the Court grants the Government's motion for summary judgment, the parties' stipulated motion is **DENIED as moot**.

ORDER - 1

The fence separates a wooded area of undeveloped JBLM property from the adjacent civilian residential area ("Woodbrook neighborhood"). *Id*. Just beyond the fence there is a trail through the undeveloped wooded area of JBLM that Woodbrook neighborhood residents frequently used as a dog-walking trail and park. *Id*. at 4–5. It was known in the community that the area was also frequented by teenage children. *Id.* There has been a "6-foot by 3-foot hole" in the fence since 2007. *Id*. Defendant Adonis Brown ("Brown") had frequently used the hole in the fence to access the trail on JBLM property. *Id*. at 6. The hole is positioned only 20 feet from the end of the fence, which extends across the end of a county road, meaning that the fence prevented vehicles from entering the woods from the road, but did not prevent pedestrians from simply walking around the fence and into the wooded area. Dkt. 21 at 5.

Throughout the thousands of undeveloped acres on JBLM, the military posts signs stating that the area is owned by JBLM, that access is restricted to authorized personnel only, and no trespassing is allowed. Dkt. 50 at 2; *see also* Dkt. 50-1. The military also maintains a permitting system for adults, authorizing limited access to the undeveloped areas of JBLM to members of the public who register and sign a release of liability. Dkt. 50 at 2–3; *see also* Dkts. 50-2, 50-4.

On October 20, 2015, 14-year-old A.D. and his 13-year-old brother, Alexander Demello, followed their 17-year-old friend, Brown, onto the undeveloped wooded area of JBLM property. The Demellos and Brown were residents of the Woodbrook neighborhood and "had no knowledge that the wooded property adjacent to their neighborhood belonged to JBLM or that it was Government Property." *Id*. Plaintiffs

allege that while the boys were walking on a trail through the undeveloped wooded area, Brown "found a gun under some brush" and accidently fired it, striking Alexander Demello "in the face just below his right eye." *Id*. at 6–7. There is some evidence in the record to support this version of events. *See* Dkt. 20. There is also evidence in the record suggesting that Brown brought the gun with him, already loaded with both bullets and blanks, and accidently shot Alexander Demello when he mistook the order of ammunition. *See id.* at 35. On October 25, 2015, Alexander Demello died at Mary Bridge Children's Hospital in Tacoma, Washington.

On August 26, 2016, Plaintiffs Jaime Demello, the Estate of Alexander Demello, Michael Demello, and minor children A.D. and O.D. (collectively "Plaintiffs"), filed their original complaint against the Government, Adonis Brown ("Brown"), and several unnamed others. Dkt. 1. Plaintiffs asserted claims for common-law negligence, premise liability, wrongful death, and negligent infliction of emotional distress. Specifically, Plaintiffs alleged that the Government's failure to secure the perimeter separating the base from a civilian neighborhood, despite safety complaints and knowledge of criminal activity in the area, breached a duty owed to Alexander Demello and proximately caused his death and the other injuries alleged. *See id.*

On June 1, 2017, the Government moved to dismiss the original complaint. Dkt. 17. On August 9, 2017, the Court granted the motion to dismiss. Dkt. 27. Specifically, the Court found that the factual allegations in the original complaint focused exclusively on the Government's decision not to maintain the base's perimeter fence and that the Government's decision was the exercise of a discretionary function. *Id.* Accordingly, the

Court lacked jurisdiction to consider such a claim under the Federal Tort Claims Act ("FTCA"). However, the Court also found that Plaintiffs, while they had failed to adequately allege a claim based on a failure to warn of known hazards, had nonetheless sufficiently referenced such a claim as to warrant leave to file an amended complaint. *Id.*

On October 4, 2017, Plaintiffs filed their second amended complaint. Dkt. 28. The second amended complaint alleges that the Government knew of frequent criminal activity taking place in the area where Alexander Demello was shot and nonetheless failed to remedy or warn of known dangers inherent to such an area of frequent criminal conduct, such as the presence of weapons or other dangerous criminal paraphernalia. *Id.* 8–9. The second amended complaint also renewed Plaintiffs' allegations that the Government is liable for its decision not to repair the hole in the perimeter fence or maintain adequate security patrols. *Id.*

On November 16, 2017, the Government moved to dismiss the second amended complaint for lack of jurisdiction on the same theory as before. Dkt. 31. On January 31, 2018, the Court granted the motion in part and denied it in part. Dkt. 44. Specifically, the Court again dismissed Plaintiffs' claims predicated on a theory that the Government was liable for not repairing the fence, but denied the motion as it pertained to Plaintiffs' claims that the Government was negligent in failing to warn Alexander Demello of known dangers. *Id.*

On February 20, 2018, the Government filed its present motion for summary judgment. Dkt. 47. On March 9, 2018, Plaintiffs responded. Dkt. 54. On March 16, 2018, the Government replied. Dkt. 55.

## II. DISCUSSION

**A.      Standard**

The Government moves for summary judgment on Plaintiffs' remaining negligence claims. Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Plaintiffs' negligence claims are predicated on a theory of premises liability. In Washington, a negligence action requires that Plaintiffs establish that (1) the defendant owed plaintiff a duty; (2) the defendant breached that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169 (2013). The legal duty owed by a landowner depends on whether a plaintiff falls within the "category of a trespasser, licensee, or invitee." *Iwai v. State, Employment Sec. Dep't*, 129 Wn.2d 84, 90–91 (1996).

There is no genuine dispute over the fact that Alexander Demello, A.D., and Brown were trespassers on JBLM. While Plaintiffs argue that the boys were invitees because the Government "was acting in a proprietary capacity in inviting the public to use parts of its property recreationally," the record makes clear that undeveloped JBLM areas were open only for limited access to properly permitted individuals. The subject property was not held out as open for unrestricted public use, as evidenced by the no trespassing signs posted throughout the JBLM undeveloped areas. There is also no

dispute over the fact that the boys did not possess the necessary permitting to use the property or otherwise obtain permission to enter the property.

"A landowner generally owes trespassers and licensees the duty to refrain from wilfully or wantonly injuring them, whereas to invitees the landowner owes an affirmative duty to use ordinary care to keep the premises in a reasonably safe condition." *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 41–42 (1993). "[I]n order to constitute a 'willful and wanton injury,' the act producing the injury must have been committed knowingly and intentionally, or must have been committed under such circumstances as to evince a reckless disregard for safety of the persons injured." *Sikking v. National R.R. Passenger Corp.*, 52 Wn. App. 246, 247 (1988). Plaintiffs have failed to allege, let alone support with evidence, any conduct which could be construed as a reckless disregard for safety. Accordingly, Plaintiffs cannot establish a necessary element of their claims for negligence and the Government is entitled to summary judgment.

The Court further notes that even if the subject area of woods were open for public use without the requirement of utilizing the military's permitting process and Plaintiffs could be construed as invitees, Plaintiffs' claims would still be barred under Washington's recreational land use statute. "Washington's recreational land use statute [RCW 4.24.210] aims to encourage landowners to open their lands to the public by modifying the common law duty owed to invitees, licensees, and trespassers." *Jewels v. City of Bellingham*, 183 Wn.2d 388, 394 (2015) (citing *Davis v. State*, 144 Wn.2d 612, 615–16 (2001)). Under RCW 4.24.210, "landowners who open their land to the public for recreational purposes, free of charge, are generally not liable for unintentional injuries to

such users." *Jewels v. City of Bellingham*, 183 Wn.2d 388, 394 (2015). The only exception to this rule against liability is where a plaintiff can show that "the injuries were sustained by reason of a known dangerous artificial latent condition for which no warning signs were posted." *Jewels*, 183 Wn.2d at 394 (quoting *Davis v. State*, 144 Wn.2d 612, 616, 30 P.3d 460 (2001)); RCW 4.24.210 (4)(a) ("Nothing in this section shall prevent the liability of a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted"). "All four elements (known, dangerous, artificial, latent) must be present in the injury-causing condition for liability to attach to the landowner." *Jewels*, 183 Wn.2d at 394 (citing *Davis*, 144 Wn.2d at 616, 30 P.3d 460).

Plaintiffs have failed to provide any evidence indicating that the firearm Brown fired at Alexander Demello was a known condition to the military. Nor can an inference of knowledge reasonably be implied through the facts alleged or otherwise provided to the Court. Accordingly, even if the subject property were open to public use and the boys were not trespassers, Plaintiffs' claims against the Government must still fail as a matter of law.

### III. ORDER

Therefore, it is hereby **ORDERED** that the Government's motion for summary judgment (Dkt. 47) is **GRANTED** and Plaintiffs' claims against the Government are **DISMISSED**. The only claims remaining before the Court are Plaintiffs' claims against Defendant Brown. On December 13, 2016, the Clerk entered a default against Brown for

his failure to answer Plaintiffs' complaint. Plaintiffs shall file a motion for default judgment or voluntarily dismiss their claims against Brown no later than May 4, 2018.

Dated this 10th day of April, 2018.

BENJAMIN H. SETTLE
United States District Judge